UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cynthia L. Horn,

    Plaintiff,

v.                                                  Case No. 11-13799

Knight Facilities Management – GM,        Honorable Sean F. Cox
Inc., a Delaware corporation,

    Defendant.
_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this suit against Defendant, an entity that provides commercial cleaning services for General Motors Corporation, alleging that Defendant failed to reasonably accommodate her disability, in violation of the Americans with Disabilities Act. Plaintiff was working for Defendant as a janitor and her claimed disability is sensitivity to cleaning solutions. After Plaintiff's own physician placed a medical restriction on Plaintiff of "No exposure to Cleaning Solutions," Defendant ultimately determined that it had no jobs that would meet such a broad restriction.

The matter is currently before the Court on Defendant's Motion for Summary Judgment. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons below, the Court shall GRANT Defendant's Motion for Summary Judgment because Plaintiff cannot establish that she is a qualified individual because

1

she cannot perform the essential functions of a janitor position, either with or without a reasonable accommodation.

## BACKGROUND

Plaintiff Cynthia L. Horn ("Plaintiff" or "Horn") filed this action against Defendant Knight Facilities Management–GM, Inc. ("Defendant" or "Knight") on August 31, 2011, asserting federal-question jurisdiction. Plaintiff's Complaint asserts that she filed a "charge of employment discrimination on the basis of disability" with the EEOC on November 16, 2010. (Compl. at ¶ 3). Her complaint alleges that Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12117 ("the ADA") by failing to reasonably accommodate her disability.

Following the close of discovery, on August 1, 2012, Defendant filed a Motion for Summary Judgment. (Docket Entry No. 12).

This Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 6 at 2-3). Defendant fully complied with the Court's practice guidelines for

motions for summary judgment such that along with its motion, it filed a "Statement of Material Facts Not In Dispute" (Docket Entry No. 15). Plaintiff did not file a Counter-Statement of Disputed Facts. In support of her response, Plaintiff submitted several exhibits. Thus, pursuant to Fed. R. Civ. P. 56 (c) and (e) and this Court's Practice Guidelines set forth in the Scheduling Order, all of the properly-supported material facts set forth in Defendants' Statement of Material Facts Not In Dispute, that are not controverted by the evidence cited by Plaintiff, are deemed undisputed.

The following material facts are gleaned from the evidence submitted by the parties, taken in the light most favorable to Plaintiff, the nonmoving party.

Defendant provides cleaning and building maintenance services for General Motors Corporation ("GM") and other companies. (Kuenker Dep. at 9).

Defendant has 120 hourly janitors working at the GM Tech Center, who are unionized and represented by Local 160 of the UAW. (Kuenker Dep at 10). Defendant is responsible for cleaning approximately 30 buildings at the GM Tech Center. (*Id*. at 5). The specific cleaning chemicals used by Defendant's janitors who work at the GM Tech Center are mandated by Defendant's client, GM. (Kuenker Decl. at ¶ 8).

Plaintiff began working for Defendant in July of 2008. (Horn Dep. at 73).[1] Plaintiff was provided with a written job description when she began her employment. (Horn Dep. at 107; Horn Dep. Ex. 16). That written job description for janitors states that the position consists of

---

[1] It is undisputed that the terms and conditions of Horn's employment were governed by a collective bargaining agreement. (Horn Dep. at 104). Horn received a copy of the collective bargaining agreement. (Horn Dep. at 104). Horn's seniority date is July 14, 2008. (Aesy Decl. at ¶ 5).

performing "heavy cleaning duties, such as cleaning floors, shampooing rugs, washing walls and glass, and removing rubbish." Specific tasks set forth in the job description include: "[s]ervice, clean and supply restrooms," "[c]lean building floors by sweeping, mopping, scrubbing, or vacuuming them", "[f]ollow procedures for the safe use of chemical cleaners", "[m]ix water and detergents or acids in containers to prepare cleaning solutions, according to specifications", "[s]trip, seal, finish and polish floors," and "[c]lean windows, glass partitions, and mirrors using soapy water or other cleaners, sponges and squeegees." (Ex. 3 to Def.'s Motion).

Plaintiff received a copy of the list of cleaning chemicals and solutions used at the GM Tech Center as part of her training. (Horn Dep. at 77, Def.'s Ex. 5). Plaintiff used the same cleaning chemicals and solutions in all the buildings she worked in while employed by Defendant. (Horn Dep. at 86, 90-91, & 93).

In 2010, Plaintiff worked the First Floor North cleaning route in the Cadillac Building. (Bates Dep. at 11). Plaintiff's duties in that position consisted of cleaning seven or eight restrooms, the main lobby, the main cafeteria, a smaller auxiliary cafeteria, numerous conference rooms, cubicles, hallways, and stairs. (Horn Dep. at 94-98; Bates Decl.). In doing so, Plaintiff had to perform a variety of tasks. Among those tasks were: mopping floors and stairs; cleaning cafeteria tables, refrigerators and microwaves; cleaning sinks and countertops; cleaning conference tables; cleaning drinking fountains; and spraying trash receptacles after emptying them. (*Id.*). Plaintiff's tasks also included cleaning restrooms and Plaintiff testified that she cleaned restrooms on each route that she performed while working for Defendant. (Horn Dep. at 107).

Beginning in 2010, Plaintiff developed a sensitivity to the cleaning chemicals that were

used by janitors at the Tech Center. (Compl. at ¶ 14; Langenburg Tr. at 73-74). On March 22, 2010, Plaintiff complained of pulmonary symptoms after working with a disinfectant in a bathroom in the course of her employment with Defendant. (Horn Dep. at 108). Plaintiff sought treatment with her physician, Dr. Lisa Langenburg, the following day. Plaintiff did not see Dr. Langenburg that day, but saw one of her associates. (*Id.*).

Plaintiff worked part of the next day, but her symptoms returned. (Horn Dep. at 111). When her symptoms returned, Plaintiff advised her supervisor Keith Bates ("Bates") and asked if she could punch out and go home and he "said of course." (Horn Dep. at 111). Plaintiff then "called [her] doctor again" and advised that "the symptoms are even worse today." (*Id.*) Plaintiff then returned to see Dr. Langenburg.

Plaintiff remained off work, on FMLA leave, until July 12, 2010. (Horn Dep. at 112). When she returned to work at that time, Plaintiff provided Defendant with a letter from Dr. Langenburg that stated that she was releasing Plaintiff to return to work on July 12, 2010, with the following restrictions: "restrict Bathroom Chemical exposure max 2 hr per 8 hr day, make effort to ventilate area." (Ex. 7 to Def.'s Br.).

Plaintiff testified that when she provided that letter to Bates he "said no problem, Cindy, we're just glad to have you back." (Horn Dep. at 112). On July 12, 2010, Bates assigned four of the bathrooms on Plaintiff's route to another janitor, so that Plaintiff would only clean four or five bathrooms, rather than eight. (Horn Dep. at 113).

Nevertheless, within two hours of working on July 12, 2010, Plaintiff's symptoms of having a burning sensation in her throat and lungs returned. (Horn Dep. at 113). Plaintiff advised Bates about this and he drove Plaintiff to a Concentra medical center that day. (*Id.* at

114-15).

Plaintiff saw her own physician, Dr. Langenburg, the following day, on July 13, 2010. (Horn Dep. at 115). Plaintiff testified that Dr. Langenburg changed her work restrictions in that she "said no chemical exposure, period." (Horn Dep. at 115).

Dr. Langenburg gave Plaintiff a letter, dated July 13, 2010, indicating that she was releasing Plaintiff to work on July 14, 2010, with the following work restriction: "Restrictions – No exposure to Cleaning Solutions." (Ex. 9 to Def.'s Br.). Plaintiff provided Dr. Langenburg's July 13, 2010 Letter to Defendant.

On July 21, 2010, Defendant's Human Sources Manager Kristya Smith ("Smith") wrote a letter to Dr. Langenburg explaining that she is "the Human Resources Manager for Knight FM at the GM Tech Center" and that on July 13, 2010 Dr. Langenburg placed Plaintiff on restrictions that prevent her from being able to perform her job duties. (Ex. 10 to Def.'s Br.). Smith asked Dr. Langenburg if she would "review the cleaning solution fact sheet detailing the exposure limits of each chemical [Plaintiff] is being exposed to and the job description detailing what is required of her and based on this information provide updated restrictions" so that we can determine whether or not Defendant has any work available for Plaintiff. (*Id*.).

Plaintiff testified that, in response to Smith's letter, Dr. Langenburg advised that she would not lift or change her work restrictions. (Horn Dep. at 120). To date, Dr. Langenburg has not changed her work restrictions for Plaintiff. (*Id*.). Dr. Langenburg also contacted Smith and advised Smith that she would not lift or alter the work restrictions for Plaintiff. (Langenburg Dep. at 70-71). Dr. Langenburg testified that her opinion was that Plaintiff could not be around any chemicals, period. (*Id.* at 71).

Smith discussed Plaintiff's work restrictions with Virginia Kuenker ("Kuenker"), Defendant's Vice President of Human Resources, and Defendant ultimately determined that it had no jobs that would meet the work restrictions placed on Plaintiff. (Kuenker Dep. at 32-33 & 41). Virginia Kuenker testified that she viewed the work restrictions placed on Plaintiff by Dr. Langenburg as "extremely serious because it says 'no exposure to cleaning solutions,'" and anyone working in the buildings "would be exposed no matter where you were in any building because cleaning solutions are throughout every building at GM." (Kuenker Dep. at 32-33). Kuenker further testified:

> Q. Did you ever consider whether you could accommodate her by having her do work that didn't involve using the cleaning solutions?
> A. She would still be in the buildings and she still would be exposed to the cleaning solutions. They're in the air. They're – they would be on her skin. They would be on her clothes. There was no other – there was no other opportunity there for her.
> Q That was not my question. My question is, did you consider giving her work that didn't involve using – actually using these chemicals, such as giving her work where she was maybe vacuuming or emptying trash or some other kinds of tasks that didn't involve actual use of these chemicals?
> A. No, because she still would have been around the chemicals.

(*Id*. at 43-44).

Plaintiff testified that Smith advised her that there was no janitorial work within her new restrictions because all jobs involved using cleaning solutions. (Horn Dep. at 121-22).

Plaintiff filed a charge of discrimination on the basis of disability on November 16, 2010. (Compl. at 3). Plaintiff received a Notice of Right to Sue on June 9, 2011, and filed this action on August 31, 2011.

During discovery in this action, Dr. Langenburg testified that she never told Defendant, either verbally or in writing, that Plaintiff should wear a respirator at work. (Langenburg Dep. at

7

75-78). Nevertheless, Dr. Langenburg testified as follows during her deposition on June 6, 2012:

> Q. And if she used gloves and used a respirator, would you have allowed her to return to work under those circumstances?
> A. I would have allowed her to return to work with the respirator, but I don't know for sure if she would react or not because she never did it.
> Q. If she wanted to do it though and try, would you agree?
> A. I would have let her, because she so desperately wanted to work.
> . . . .
> Q. All right. So you just said something interesting. You would have allowed her to come back to work with a respirator?
> A. I would have let her try it, yes.
> Q. Okay, but you're not sure if that would have prevented the exposure?
> A. I don't know.
> Q. Okay. So she may have been exposed even with the respirator is what you are suggesting?
> A. I don't know. I don't know how much it would filter that out. I don't have enough knowledge of the respirators to know.
> Q. Certainly safer to just take her out of the exposure altogether?
> A. I recommended to be away from it altogether, and it looks like that was the recommendation of Dr. Rosenman as well.

(Langenburg Dep. at 81-83).

Plaintiff testified that she does not know of any other facilities in the metropolitan Detroit area that use the same chemicals that are used at the GM Tech Center and that she can work anywhere in the world so long as she does not have to use those specific chemicals that are used at the GM Tech Center. (Horn Dep. at 185).

## ANALYSIS

Where, as here, a plaintiff does not rely on direct evidence of discrimination, "the burden-shifting framework of *McDonnell Douglas* governs a claim of disability discrimination." *Shoemaker v. E.I. DuPont de Nemours and Co.*, 405 Fed.App'x 16, 18 (6th Cir. 2010) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184-85 (6th Cir. 1996)). As explained by the Sixth Circuit, "[t]hat familiar framework works as follows: The plaintiff must first establish a

prima facie case of discrimination." *Shoemaker, supra*, at 18 (citing *Monette, supra*). If he satisfies that obligation, the burden shifts to the employer to offer a "legitimate nondiscriminatory" reason for its challenged action. If the employer does so, the burden shifts back to the plaintiff to establish that the employer's proffered reason is merely a pretext for unlawful discrimination. *Id.*

I. **Can Plaintiff Establish A Prima Facie Case Of Disability Discrimination?**

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that: 1) she is disabled; 2) she is otherwise qualified for the position, with or without reasonable accommodation; 3) and she would not have been discharged but for her disability. *Frengler v. General Motors*, 2012 WL 204419 (6th Cir. 2012) (citing *Lewis v. Humboldt Acquis. Corp.*, __ F.3d __ (6th Cir. May 25, 2012) (en banc)).

In its Motion for Summary Judgment, Defendant challenges the first and second elements.

A. **Is Plaintiff Disabled Under The ADA?**

Under the ADA, "[t]he term 'disability' means, with respect to an individual": 1) a physical or mental impairment that substantially limits one or more major life activities of such individual; 2) a record of such an impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A). "Major life activities" include, but are not limited to, caring for oneself, learning, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A).

In its motion, Defendant asserts that Plaintiff cannot establish that she is disabled under the ADA because numerous cases that have analyzed "whether an employee, who has become

sensitized to a particular stimuli which is only exacerbated by exposure to that stimuli, have concluded that the employees were not disabled within the meaning of the ADA." (Def.'s Br. at 9). Defendant relies on several cases with analogous facts. *See, e.g., Minnix v. City of Chillicothe*, 205 F.3d 1341, 2000 WL 191828 (6th Cir. 2000) (Holding the plaintiff was not disabled because plaintiff's major life activities of working and breathing were not substantially limited by his condition where plaintiff was able to work and breathe in the absence of diesel fumes but could not work in a job that exposed him to diesel fumes due to breathing difficulties caused by diesel fumes); *Land v. Baptist Med. Ctr.*, 164 F.3d 423 (8th Cir. 1999) (plaintiff who had two allergic reactions to peanuts is not disabled under the ADA because her eating and breathing are not substantially limited by her condition); *Gergen v. City of Kentwood*, 2010 WL 2010878 (W.D. Mich. 2010) (Holding plaintiff is not disabled under the ADA and explaining that "[m]any courts have held that sporadic episodes of breathing difficulty triggered by a specific noxious irritant, such as cigarette smoke, are not sufficiently to qualify an individual as disabled within the meaning of the ADA when the individual is otherwise able to breathe without difficulty.") (collecting cases); *Boker v. Secretary, Dept. of Treasury*, 2009 WL 3199074 (S.D. Ohio 2009) (Plaintiff is not disabled under the ADA where her asthma is only triggered by specific irritants).

As Plaintiff notes, however, those decisions were decided and issued under the stricter disability standard that existed prior to the 2008 amendments to the ADA.[2]

---

[2] In its Reply, Defendant contends that *Gergen* is a "post ADA Amendments Act case." (Def.'s Reply Br. at 1). But because the plaintiff in that case was terminated on February 11, 2008, before the 2008 amendments became effective on January 9, 2009, the stricter pre-amendment standard applied to the plaintiff's claims in *Gergen*. *See Scott v. G&J Pepsi-Cola Bottlers, Inc.,* 391 Fed. A'ppx. 475, 479 n.3 (6th Cir. 2010)

"To broaden the definition of 'disability,' Congress passed the ADA Amendments Act of 2008." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). The ADA, as amended, has "[r]ules of construction regarding the definition of disability" which include that: 1) the "definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter"; 2) the "term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008"; and 3) an "impairment that substantially limits one major life activity need not limit other major life activities in order be considered a disability." 42 U.S.C. § 12102(4). The amendments also include that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Thus, the 2008 amendments to the ADA broadened what is considered a disability under the ADA. Plaintiff asserts that the Court should not rely on the above cases because they were decided before those amendments were enacted. Plaintiff contends that her "work-related lung condition is an impairment of her respiratory system that substantially limits the two major life activities of breathing and working." (Pl.'s Br. at 9).

Plaintiff also seeks to rely on the amendment that provides that [a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). Plaintiff asserts that "even though plaintiff's sensitivity to the cleaning chemicals is only triggered by exposure to them, the fact that her condition is in remission when she is not exposed means it still substantially limits the major life activity of breathing and working because her doctors continue to recommending [sic] she not be exposed."

11

(Pl.'s Br. at 10).

Yet, as Defendant notes in its Reply Brief, Plaintiff has not directed the Court to any post-amendment cases that retreat from the general holding of the above cases that a transient adverse reaction when exposed to a specific noxious irritant in the workplace is not a disability for purposes of the ADA. (Def.'s Reply Br. at 1).

In any event, this Court need not decide whether Plaintiff's claimed disability qualifies as a disability under the new and broader standard. Assuming *arguendo* that it does, Plaintiff's complaint must still be dismissed because she cannot establish that she is otherwise qualified for the position, either with or without a reasonable accommodation.

### B. Can Plaintiff Establish That She Is Otherwise Qualified For The Position, With Or Without A Reasonable Accommodation?

A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Defendant contends that, under the undisputed facts of this case, Plaintiff cannot establish that she is a qualified individual because she cannot perform the essential functions of the janitor position, either without or without a reasonable accommodation.

Plaintiff does not contend that she can perform the essential functions of the janitor position without a reasonable accommodation. Rather, Plaintiff asserts that she is a qualified individual who, *with reasonable accommodation*, can perform the essential functions of her job as a janitor. (Pl.'s Compl. at ¶ 20). Plaintiff contends that Defendant failed to provide her with a reasonable accommodation of her alleged disability. Plaintiff contends that she could have performed her job as a janitor if Defendant provided her with either of the following two

accommodations: 1) eliminating Plaintiff's bathroom cleaning duties; or 2) allowing Plaintiff to perform her job using a respirator. (Pl.'s Br. at 11 & 15).

The Court concludes that Plaintiff cannot establish that she is otherwise qualified for the janitor position with a reasonable accommodation.

A disabled employee like Plaintiff, who claims that she is otherwise qualified with a reasonable accommodation, bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-34 (6th Cir. 1998). If the plaintiff-employee meets that burden, the defendant-employer then has the burden of persuasion to show that an accommodation would impose undue hardship. *Id.*

Under the undisputed facts of this case, both of the accommodations proposed by Plaintiff are objectively unreasonable.

### 1. Eliminating Plaintiff's Bathroom Cleaning Duties

First, Plaintiff asserts that her alleged disability could have been accommodated "by entirely eliminating the bathrooms on her route." (Pl.'s Br. at 11; *see also* Pl.'s Affidavit, attached as Ex. 14 to Pl.'s Br.).

This argument can be easily disposed of because even if Defendant had entirely eliminated the bathroom cleaning duties for Plaintiff as an accommodation, her janitor position entailed far more than cleaning bathrooms. Her job responsibilities also included: mopping floors and stairs; cleaning cafeteria tables, refrigerators and microwaves; cleaning sinks and countertops; cleaning conference tables; cleaning drinking fountains; and spraying trash receptacles after emptying them. (Horn Dep. at 94-98; Bates Decl.). These remaining tasks also

involve using various cleaning solutions but Dr. Langenburg's final restriction was "No exposure to Cleaning Solutions." Her final restriction, unlike her earlier restriction, was not limited to cleaning solutions used in cleaning bathrooms.

### 2. Use Of A Respirator

Second, Plaintiff claims that a respirator "would have allowed plaintiff to work without any job restructuring or other accommodation." (Pl.'s Br. at 15). Plaintiff contends that there is a question of fact as to whether Defendant "failed to reasonably accommodate plaintiff by considering acquiring a respirator for plaintiff to use when cleaning bathrooms." (*Id.*).

This argument too can be disposed of quickly because Dr. Langenburg's final restriction was not limited to exposure to breathing fumes from chemical solutions. Her restriction was "No exposure to Cleaning Solutions" and that would include using or touching cleaning solutions.

Although Dr. Langenburg now claims that she would have allowed Plaintiff "to try" coming back to work using gloves and a respirator, Dr. Langenburg never advised Defendant or Plaintiff that she recommended a respirator or gloves for Plaintiff, nor did Dr. Langenburg ever release Plaintiff to work provided that she wore a respirator. To the contrary, Dr. Langenburg's restriction was "No exposure to Cleaning Solutions," which Plaintiff and Dr. Langenburg understood to mean that Plaintiff was restricted from cleaning solutions altogether. Moreover, Dr. Langenburg declined to modify or reduce the broad work restriction she placed on Plaintiff when Defendant's Human Resources representative asked to her review and reconsider her restriction.

Defendant was entitled to rely on Dr. Langenburg's express written restriction of "No

14

exposure to Cleaning Solutions," in determining whether a reasonable accommodation for Plaintiff was possible. *Griffin v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 383 (6th Cir. 1998) (holding that an employer is entitled to rely on medical restrictions provided by the employee to determine whether a reasonable accommodation is possible); *see also Arredondo v. Howard Miller Clock Co.*, 2009 WL 2871171 (W.D. Mich. 2009) (The defendant employer knew the severity of the plaintiff's restrictions at the time and it had a right to rely on those restrictions when assessing whether a reasonable accommodation could have allowed the plaintiff to continue working). In short, Defendant was entitled to take Dr. Langenburg at her word that Plaintiff could have "No exposure to Cleaning Solutions" of any kind. Given that broad restriction, this commercial cleaning company's "inquiry into possible accommodations was understandably limited." *Id*. There are very few tasks assigned to a janitor in a commercial building, that do not require at least some direct use of cleaning solutions. Moreover, even if Plaintiff were limited to performing such tasks, she would still be working in the same areas where the cleaning solutions were being used and thus would still be exposed to them. After asking Dr. Langenburg to reconsider her broad restriction to no avail, Defendant ultimately concluded that it did not have any jobs that would meet Plaintiff's broad medical restriction.

The Court concludes that there is no genuine issue of material fact that Plaintiff failed to propose or identify an objectively reasonable accommodation. Thus, under the undisputed facts presented here, no reasonable jury could find that Plaintiff was qualified for the position of janitor either with or without a reasonable accommodation. The Court shall grant Defendant's Motion for Summary Judgment.

**CONCLUSION & ORDER**

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Complaint shall be DISMISSED.

IT IS SO ORDERED.

                                            S/Sean F. Cox
                                            Sean F. Cox
                                            United States District Judge

Dated: December 3, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 3, 2012, by electronic and/or ordinary mail.

                                            S/Jennifer McCoy
                                            Case Manager